UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80139-CR-ALTMAN

**UNITED STATES OF AMERICA**,

    *Plaintiff*,

v.

**CLIFFORD DAVIS**,

    *Defendant.*

_____/

## ORDER

The Defendant, Clifford Davis, asks us to reduce his prison sentence because of the COVID-19 pandemic. *See* Emergency Motion to Reduce or Modify Term of Imprisonment [ECF No. 142] (the "Motion"). The Government opposes Davis's request. *See* Government's Response to Defendant's Motion to Reduce Sentence [ECF No. 145] (the "Response"). After careful review, we **DENY** the Motion.

### THE FACTS

On September 14, 2010, Davis (with the help of his co-defendants) robbed a Chase Bank in West Palm Beach, Florida, and got away with $144,000 in cash. *See generally* Plea Agreement/Factual Proffer Statement [ECF No. 45] (the "Plea Agreement") at 8–9. When the getaway car crashed, Davis and his co-defendants carjacked a woman at gunpoint. *Ibid.*; *see also* Response at 5–6 ("On September 14, 2020 [sic], the defendant and others committed the armed robbery of a bank in West Palm Beach, successfully stealing approximately $144,000. The defendant and a co-conspirator fled the scene of the robbery on a motorcycle, which crashed, prompting them to carjack a woman at gunpoint, stealing her vehicle." (cleaned up)).

A grand jury in our District returned a two-count indictment against Davis, charging him with one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a), and one count of brandishing a firearm during a crime of violence, in violation of 18 U.S.C § 924(c). *See generally* Indictment [ECF No. 10]. On November 10, 2010, Davis pled guilty to both offenses. *See* Plea Agreement at 7. On January 13, 2011, Judge Ryskamp—after considering Davis's role in this offense and his criminal history—sentenced Davis to 224 months in prison, to be followed by five years of supervised release. *See* Judgment [ECF No. 73] at 2–3.[1] When Davis appealed his conviction and sentence to the Eleventh Circuit, *see* Notice of Appeal [ECF No. 97], that court affirmed them both, *see generally United States v. Davis*, 450 F. App'x 903 (11th Cir. 2012). And, when Davis filed a motion to vacate his sentence under 28 U.S.C. § 2255, *see* Motion to Vacate [ECF No. 136], Judge Zloch denied it, *see* Order Denying Motion to Vacate [ECF No. 138].

Which brings us to this Motion, where Davis discusses the dangers COVID-19 poses to him, to his prison facility, and to prisoners around the country. *See generally* Motion at 1–3. Davis says he contracted a virus (which he suspects was COVID-19) sometime in February 2020, and he remembers that the virus left him with "symptoms of fever, headaches, body aches, dry cough, sore throat, dizziness, and shortness of breath[.]" *Id.* at 2. Davis also claims he "tested positive [for COVID-19] on Aug. 25, 2020," after (allegedly) being "housed in a unit where there has already been an inmate that has tested positive weeks before and is housed on top of another dorm that has had positive cases." *Id.* at 3. Although he appears to have recovered from these bouts with COVID-19, he insists that the continued presence of the virus in society justifies his release. *See* Motion at 4 ("However, the [outbreak] of the severely dangerous covid virus and the high possibility of contracting the virus or in

---

[1] *See also* Transcript of Sentencing [ECF No. 113] (the "Sentencing Transcript") at 4 (showing that Judge Ryskamp rejected Davis's contention that he played only a minor role); *id.* at 29 ("I think [the 224-month sentence] is a very severe sentence, but it moderates to some degree based on the circumstances and the statutory factors.").

my case testing positive[ ] presents a serious national emergency that would allow an excuse [sic] compliance with the normal exhaustion [of administrative remedies] rules."); *see also id.* at 6 ("Additionally this Court should find the BOP's lack of transparency regarding the severity of the highly dangerous [COVID-19] virus, which prevented the Defendant from using [the] § 3553(a) factor[s] for a sentence reduction at the bottom end of the amended guidelines range during the First Step Act proceedings, should also constitute extraordinary and compelling circumstances." (cleaned up)). Davis adds that, "since his incarceration, [he] has dedicated himself to his education," *ibid.*, and he claims to be "deeply remorseful for the decisions he made as a young man," *id.* at 7.

The Government responds by outlining the steps the BOP has taken to "mitigate sharply the risks of COVID-19 transmission in a BOP institution." Response at 5; *see also id.* at 1–5. The Government adds that Davis "tested negative for COVID-19 on September 10, 2020." *Id.* at 8 (cleaned up). And, according to the Government, "[w]hile incarcerated, Davis has been sanctioned for refusing to obey an order in 2011, using another inmate's phone account in 2012, using another inmate's phone account on a different occasion in 2012, ownership of contraband in 2013, failing to stand for count in 2013, and disposing of an item during a search in 2015." *Id.* at 7 (cleaned up).

## ANALYSIS

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Ibid. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. *Fourth*, the Court should

determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Ibid.*; *see also United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020) (Altman, J.) (applying this framework). We'll discuss these steps in turn.

## I. Exhaustion of Administrative Rights to Appeal

Courts "may not" modify a term of imprisonment until "*after* the defendant has *fully exhausted all* administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). "This language is unambiguous and may not be altered by judicial fiat." *United States v. Walker*, 2021 WL 1749976, at *2 (S.D. Fla. May 4, 2021) (Altman, J.) (cleaned up).

Our parties agree that Davis asked the BOP to release him and that the warden of his prison facility denied his request. *See* Motion at 4 ("Clifford Davis has requested to the BOP for [a compassionate release] motion and the BOP has refused to do so."); *see also* Response at 7 ("The warden denied Davis's [administrative] request on June 11, 2020. (cleaned up)); *id.* at 9 ("Davis did request that the BOP move for his release, and he made that request more than thirty days ago."). But the Government nonetheless contends that Davis failed to exhaust his administrative remedies because "the ground of his administrative request was unrelated to his current motion . . . . [and] did not discuss the COVID-19 pandemic or even another medical issue." Response at 9. Since the Government hasn't presented us with any binding cases for its view that this distinction matters, *see generally* Response, we'll assume that Davis *has* exhausted his administrative remedies. As we'll see, though, Davis fails on the merits anyway.

## II. The § 3553(a) factors

We next consider the "factors set forth in 18 U.S.C. § 3553(a)" to determine whether "extraordinary and compelling reasons warrant such a reduction [in sentence]." 18 U.S.C. §

3582(c)(1)(A)(i).[2] The district court must impose a sentence that's "sufficient, but not greater than necessary, to comply with the purposes of [§ 3553(a)]. These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment." *United States v. Boykin*, 839 F. App'x 432, 433 n.2 (11th Cir. 2021) (citing 18 U.S.C. § 3553(a)(2)). "The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Ibid.* (citing 18 U.S.C. § 3553(a)(1), (3)–(7)).

The first factor—the "nature and circumstances of the offense," § 3553(a)(1)—weighs heavily against a reduction in this case. Armed robbery and brandishing a firearm—we think it goes without saying—are serious offenses. Davis drove a motorcycle into a bank, stole $144,000 in cash, and conspired to commit a carjacking. *See generally* Plea Agreement. This first factor, then, counsels against early release.

The second factor—Davis's "history and characteristics," § 3553(a)(1)—likewise cuts against the relief he's seeking. Before his conviction in this case, Davis had already been convicted of four *other* crimes: "aggravated battery in 1998, robbery in 2000, possession of marijuana with intent to sell it in 2002, and domestic battery in 2005." Response at 6. And, while serving his current prison

---

[2] The statute separately allows for a reduction in cases where "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community[.]" 18 U.S.C. § 3582(c)(1)(A)(ii). This section is inapplicable here because Davis is 42 years old. *See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, "Clifford Davis," https://www.bop.gov/inmateloc/ (last visited Oct. 8, 2022).

sentence, Davis was sanctioned several times for violating the BOP's regulations. *See id.* at 7. Davis's history and characteristics thus provide no basis for early release.

The next factor—the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A)—likewise weighs against release. Davis wants us to ignore his propensity for recidivism and to absolve him of nearly forty percent of his sentence. This we will not do. To release Davis now would send precisely the wrong message: that armed robbery isn't serious, and that the penalties set out in our criminal laws needn't be strictly followed. Releasing Davis now, in other words, would *decrease*, rather than increase, the citizenry's respect for the law.

Finally, we've considered the need "to provide adequate deterrence to criminal conduct" and the need "to protect the public from further crimes of the defendant." § 3553(a)(2)(B)–(C). Davis's long criminal history (not to mention his disciplinary problems while in custody) strongly suggests that he doesn't obey the law, that he doesn't respect the law, and that there's very little any judge can do to stop him from continuing to break the law. Put differently, keeping Davis in prison seems to be the only way to deter him (and others like him) from committing future crimes.

The § 3553(a) factors, in short, weigh decisively against early release.

### III.     18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentencing reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.** The court may not modify a term of imprisonment once it has been imposed except that—

>    (1) in any case—
>
>       (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>           (i) extraordinary and compelling reasons warrant such a reduction; or
>
>           (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
>       (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]

18 U.S.C. § 3582(c)(1).

Because Davis is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But § 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

1.  **Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    **(A) Medical Condition of the Defendant.**

        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    **(B) Age of the Defendant.** The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1.

This reference to "subdivision (2)" requires Davis to show that he's "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

    **(g) Factors to be considered.** The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Davis bears the burden of establishing *both* that his circumstances qualify as "extraordinary and compelling" *and* that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (noting that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing" that compassionate release is warranted); *Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release."); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (Hernandez Covington, J.) ("[The defendant] bears the burden of establishing that compassionate release is warranted.").

As a preliminary matter, Davis cannot satisfy the "Age of the Defendant" test because he's 42 years old, not 65, and has not alleged any age-related decline. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). But Davis isn't suffering from a terminal illness, *see generally* Motion (failing to argue that he is), so he must satisfy the second element, which requires him to establish that he suffers from any

of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(ii).

Davis points to two things that (in his view) qualify as extraordinary and compelling circumstances. *See* Motion at 6. *First*, he claims that the BOP "is incapable of handling a COVID-19 outbreak[.]" *Ibid. Second*, he says that he has "a high likelihood of contracting COVID-19 again," and he speculates that, this time, he won't recover. *Ibid.* But these reasons—even taken together—aren't the kinds of "extraordinary and compelling" circumstances that would entitle Davis to relief.

That's because Davis is housed at FCI Coleman Medium, *see id.* at 1, where (as of this writing) a grand total of *zero* inmates (out of a total population of 1,587) and *three* staff members have active COVID-19. *See BOP: COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 8, 2022). And that's probably because the BOP has implemented some rather severe operating procedures, which—as the preceding figures make plain—have been extremely effective at preventing infections among the inmate population, especially in the 18-or-so months since safe and effective vaccines have become widely available. *See BOP's Modified Operating Procedures*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Oct. 8, 2022).

But here's the biggest problem with Davis's request: The BOP has already vaccinated the *vast majority* of its inmates and staff. *See COVID-19 Vaccine Implementation,* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 8, 2022) (noting that the BOP has administered over 330,000 doses of COVID-19 vaccines to its 143,078 inmates and 36,000 staff members). And those vaccines have proven tremendously effective at preventing COVID-19's worst effects. *See, e.g.*, Mark W. Tenforde *et al.*, *Effectiveness of mRNA Vaccination in Preventing COVID-19 –Associated Invasive*

*Mechanical Ventilation and Death — United States, March 2021–January 2022*, 71 MORBIDITY AND MORTALITY WEEKLY REP. 459, 459 (2022). Since Davis should be vaccinated by now, his risk of dying from COVID-19 should have been greatly reduced.[3]

We acknowledge that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 95,000,000 people have tested positive for the disease, and over 1,000,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Oct. 8, 2022).

But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (Polster Chappell, J.) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Because Davis has not shown that his circumstances are either "compelling" or "extraordinary," his Motion is **DENIED**.

### IV. 18 U.S.C. § 3142

But Davis's Motion fails for yet another reason—because he's failed to show that he no longer poses a danger to his community. As the relevant Guidelines provision makes plain, the "extraordinary

---

[3] Of course, if Davis has chosen *not* to receive a COVID-19 vaccine, then he alone is responsible for the additional dangers he faces from COVID-19. *See United States v. Broadfield*, 5 F.4th 801, 803 (11th Cir. 2021) ("A prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred.").

and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

Davis cannot establish that he's no longer a danger to the community. In assessing dangerousness, § 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . . , including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Each of these factors weighs heavily against Davis here.

*First*, "the offense" of conviction (armed robbery) was "a crime of violence." *Second*, the evidence against Davis was so strong that it compelled him to take a guilty plea. *Third*, Davis is a repeat offender. As we've described, Davis has prior convictions for aggravated battery, robbery, drug possession, and domestic battery. *See* Response at 6. *Fourth*, Davis does not—and cannot—show that his release would pose no "danger to any person or the community."

\*\*\*

Accordingly, after a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that Davis's Motion for Compassionate Release [ECF No. 142] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida, this 11th day of October 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record